UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

ISAAC SCHARF, DANIELLE
SCHARF, EDWARD SCHARF,
ALEX SCHARF, and C.S.,

CASE NO. 9:25-cv-80675-DMM

    Plaintiffs,

v.

BOCA GROVE PROPERTY
OWNER'S ASSOCIATION, INC.,

    Defendant.
_____/

**DEFENDANT BOCA GROVE PROPERTY OWNER'S ASSOCIATION, INC.'S MOTION TO DISMISS COMPLAINT WITH PREJUDICE WITH INCORPORATED MEMORANDUM OF LAW**

Defendant BOCA GROVE PROPERTY OWNER'S ASSOCIATION, INC. (the "Association"), pursuant to Fed. R. Civ. P. 12(b)(6) and other applicable authority, moves to dismiss Plaintiffs, Isaac Scharf ("I. Scharf"), Danielle Scharf ("D. Scharf"), Edward Scharf ("E. Scharf"), Alex Scharf ("A. Scharf), C.S. ("C.S."), and R.S.'s ("R.S."), Complaint [DE 01] in its entirety with prejudice for failure to state a claim upon which relief may be granted. In support of dismissal, the Association states as follows:

### I. INTRODUCTION

The Complaint should be dismissed for at least three reasons. First, Plaintiffs failed to comply with Florida's mandatory pre-suit mediation

process. While a dismissal for that reason may only be a detour in bringing this dispute back to this Court, the Florida legislature has mandated the pre-suit process for a reason. Second, the Complaint must be dismissed because, under well-established Florida law, Courts should not conduct *de novo* appellate reviews of disciplinary decisions made between a private voluntary organization and its members. Finally, the Complaint – which totals 279 pages and 192 paragraphs – is procedurally defective because it fails to set forth a short and plain statement, as required by the Federal Rules of Civil Procedure, and because it is a shotgun pleading.

To that end, the Complaint, which was purposefully drafted to be incendiary, inflammatory, and headline-grabbing, purports to allege violations of the Fair Housing Act. After the theatrics are stripped away,[1] and the

---

[1] *Inter alia*, Plaintiffs allege the "crime . . . was assist[ing] a famous Instagram personality wrap tefillin . . ."; that "even his one-year-old daughter was slapped with a 90-day suspension;" and that "[w]ithout notice of process, the Board subsequently extended the suspension to Isaac's entire family." Compl., at ¶¶ 1; 10. In reality, the Scharf household's membership was not suspended because they assisted someone in wrapping tefillin. Rather, it was suspended because I. Scharf participated in the making of a video, published to (at least) the maker's 2.5+ million social media followers, which was found to be offensive by numerous members of the Association. Similarly, Scharf family members were not "slapped" with a suspension and the suspension wasn't "extended" to the Scharf family. Rather, the Association's governing documents confirm that membership is attributable to the home and, therefore, the entire Scharf family. Moreover, C.S. Scharf went to the golf course to play golf during the suspension period, and the golf course staff permitted him to play golf that day, despite the Scharf household's membership suspension. *Id.* at ¶ 137. Following that outing, a clarification letter was sent to the Scharf family, reminding them that the entire household's membership in the Association was suspended. *Id.* at ¶ 140. But facts like that get in the way of good story-grabbing headlines.

misleading or otherwise false assertions are discredited, however, the Complaint is nothing more than an appeal of a disciplinary proceeding between a private, voluntary association and one of its members. Although I. Scharf knows he was required to submit this "dispute" through the mandatory pre-suit mediation process set forth in Chapter 720, Florida Statutes, he intentionally skipped that procedure in an attempt to sway the court of public opinion with his narrative. In the process, he salaciously defamed the Association, several of its board members, and other members of the community.

## II. RELEVANT FACTUAL BACKGROUND

On December 8, 2024, I. Scharf, his guest – a Social Media Influencer named Jake Adams ("Mr. Adams") – and three other Association members played a round of golf at the Association's golf course. Compl., at ¶ 73. I. Scharf invited Mr. Adams to the Association's golf course to not only play a round of golf but also because he wanted Mr. Adams to "do a 'review' of Boca Grove." *Id.* at ¶ 67. With I. Scharf's knowledge, approval and/or encouragement, during that round of golf, Mr. Adams took several video clips of he, I. Scharf and the other participants. *Id.* at ¶¶ 74–80.

On or about January 6, 2025, Mr. Adams published a compilation of those video clips to, at a minimum, his 955,000+ Instagram followers; his

988,000+ Tik Tok followers, and his 597,000+ Facebook followers (the "Subject Video").[2]

Therein, among other things, Mr. Adams referred to one of the golfers in the group as "Jew Daly," stated that the group received a food delivery from "Jew-ber Eats," called the Association's on-site café the "Starbucks of David," and showed a clip of a flushing toilet. *Id.*  Moreover, during the portion of the Subject Video that showed I. Scharf helping Mr. Adams wrap tefillin,[3] Mr. Adams's voice-over comments were that "apparently my arm needed to be re-gripped," and "this is the part where they turned me into a "Jew-nicorn." *Id.* Immediately after the Subject Video was released, numerous members of the Association voiced their displeasure therewith, advising they were offended by the Subject Video.

Exhibit 16 of the Complaint is an example of an offended Association member.  Specifically, it is the rough transcription of a voicemail an Association member left the Association's Director of Communications and

---

[2] *See* Video posted by Jake Adams (@countryclubadjacent), INSTAGRAM, Captioned: "The journey continues. Follow @jakemadams3 on his mission to find the nicest Jewish country club in the world. Big thank you to @pillowguy & @bocagrovecc for having me & to @grove.kosher for the top tier pickle" (Jan. 6, 2025), https://www.instagram.com/reel/DEgPYTUy3_a/?igsh=MWdvc2ZkZjQ4dGZsdQ==.

[3] Tefillin are a set of small black leather boxes with leather straps containing scrolls of parchment inscribed with verses from the Torah.  Tefillin are worn by adult Jewish males during weekday and Sunday morning prayers. *See* Wikipedia page for Tefillin, *available at* https://en.wikipedia.org/wiki/Tefillin (last visited June 25, 2025). This is a sacred prayer ritual.

Policy on January 9, 2025 – three (3) days after the Subject Video was released. *See* Compl., at Ex. 16. That voicemail stated, in pertinent part, as follows:

> I was just sent a something from Instagram that apparently a member of our club sent out about it. Its just disgusting and relating to Boca Grove and I don't know Orthodox community, but it was unacceptable.

*Id.*

After the Subject Video was released, a grievance was filed against I. Scharf for his participation therein and because it was his guest who created and publicized the Subject Video (the "Grievance"). *Id.* at ¶ 87. As part of the Grievance process, the Association appointed a fact-finder (the "Fact-Finder") to discuss the Grievance with those involved, including I. Scharf. *Id.* at ¶¶ 87; 90–91. The Fact-Finder's notes concerning the Grievance and the discussions the Fact-Finder had with/about all involved are attached to the Complaint. *Id.* at Ex. 13.

In the Fact-Finder's notes, I. Scharf is referred to as person "B" and a statement from "B" is included therein. *Id.* I. Scharf, a/k/a "B," also attached his email statement to the Fact-Finder concerning the Grievance to the Complaint. *See* Compl., at Ex. 9. In I. Scharf's written statement, he admitted the following:

> While some portions of the review **may not be to everyone's liking or align with our sensibilities**, I hope that it is appreciated within the context in which it was made and the audience it was intended to reach.

Page **5** of **19**

*Id.* at Exs. 9, 13 (emphasis supplied). The Fact-Finder also included statements made by two of the other Association members who were present during the golf outing, when the Subject Video was filmed. *Id.* at Ex. 13. Specifically, the Fact-Finder provided:

> E told me that he came to the club to play golf as usual. B (Isaac) invited him to play with Jake Adams, and C and D and B (Isaac) joined the game. He did not know that any videos were being made or that any pictures were going to be taken for an Instagram or tic toc [sic] video. He says he had no idea that any video was being produced or going to be put on the internet. He is shocked at what happened and wants this over. He seems sincerely upset and regretful that this happened.
>
> D told me that he received a call from B (Isaac) that he needed a 4th for a round of golf. He agreed to play. He was told by B (Isaac) that Jame Adams was a guest in the foursome. He knew somewhat who Jake Adams was. D said he had no idea that a video was being made and would be posted and would not have been a part of that.

*Id.*

On January 13, 2025, the Association's Board of Directors (the "Board"), reviewed the Grievance and concluded the grieved conduct was a violation of Boca Grove's Rules and Regulations (the "BGPOA Rules"). *Id.* at Ex. 10. Specifically, rule 3 thereof states as follows:

> General Rule 3 – Member Behavior. The conduct, language and habits of members and/or their guests within the Boca Grove complex and under the control of the Boca Grove Property Association shall be tempered with courtesy and respect for fellow members, BGPOA employees and employees of contractors. BGPOA **members and their guests shall treat everyone with**

Page **6** of **19**

**civility and in a manner that would not be offensive to a reasonable person**.

*Id.* (emphasis supplied).

Following that determination, on or about January 14, 2025, the Board notified I. Scharf that the Board proposed to impose a ninety (90) day suspension of I. Scharf's membership.[4] Compl., at Ex. 10. The January 14, 2025 letter also advised I. Scharf that the proposed suspension would be further discussed at a hearing before a three-member panel (the "Hearing Committee"). *Id.* at Exs. 10, 5 (p. 95). Further, the January 14, 2025 letter also advised I. Scharf that the Hearing Committed would either reject or confirm the Board's proposed suspension. *Id.* at Ex. 10.

On two separate occasions, I. Scharf requested that the hearing date be rescheduled. *Id.* at Ex. 12. While there is no such obligation in Florida Statutes, or otherwise, the Association accommodated both rescheduling requests. *Id.*

On March 11, 2025, the hearing proceeded; I. Scharf participated in the hearing. *Id.* at Ex. 15.

---

[4] The First Amended and Restated Declaration of Protective Covenants and Restrictions for Boca Grove (the "Declaration"), a true and correct copy of which is attached to the Complaint as Exhibit 5 explains that a member's suspension applies to the member of the Association, together with the member's family, guests, invitees, lessees and lessess's sublessee, if any. See Compl., at Ex. 5, p. 42 of 135. As a result, the membership at issue herein is not a personally membership and, as such, shall be referred to as the "Scharf Membership."

At the conclusion of the hearing, the Hearing Committee voted to confirm the proposed ninety (90) day suspension of the Scharf Membership. Compl., at Ex. 15. Also on March 11, 2025, the Association provided Plaintiffs written notice of the confirmed ninety (90) day suspension decision. *Id*.

Following the March 11, 2025 letter, on or about March 16, 2025, C.S., joined by a guest, arrived at the Boca Grove golf course seeking to play a round of golf. *Id*. at. ¶ 137. Despite the suspension of the Scharf Membership, the golf course staff permitted them to play golf that day. *Id*. at ¶ 138.

Following that round of golf, however, a letter dated March 18, 2025 was sent to I. Scharf reminding him, and his family, that, as set forth in the Association's governing documents, the suspension applied to the entire family and their guests. *Id*. at Ex. 17.

On or about May 30, 2025, ten days before the suspension ended, Plaintiffs filed this action. *See* Compl. On June 5, 2025, four days before the suspension terminated, Plaintiffs caused process to be served on the Association.

### III.   MEMORANDUM OF LAW

**I.   Standard for Dismissal.**

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the allegations in a complaint. *See* Fed. R. Civ. P. 12(b)(6). A pleading seeking relief must include a short and plain statement of the claim. Fed. R.

Civ. P. 8(a)(2).  In assessing legal sufficiency, the Court is bound to apply the pleading standard articulated in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  That is, the complaint "must . . . contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Twombly*, 550 U.S. at 570).  "Dismissal is therefore permitted when on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Glover v. Liggett Grp., Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006) (citing *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993)).

When reviewing a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and assume the truth of the plaintiff's factual allegations. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002); *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).  However, pleadings that "are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 678; *see also Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) (stating that an unwarranted deduction of fact is not considered true for

purposes of determining whether a claim is legally sufficient). "Factual allegations must be enough to raise [the plaintiff's] right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

### II. Plaintiffs' Failure to Exhaust the Mandatory Statutory Condition Precedent of Pre-suit Mediation Under Fla. Stat. § 720.311 Warrants Dismissal.

Dismissal with prejudice is warranted because Plaintiffs failed to exhaust the required pre-suit demand for mediation requirement under Section 720.311, Florida Statues. Fla. Stat. § 720.311 requires, in relevant part:

> **Disputes between an association and a parcel owner regarding use of** or changes to the parcel or **the common areas and other covenant enforcement disputes**, disputes regarding amendments to the association documents, disputes regarding meetings of the board and committees appointed by the board, membership meetings not including election meetings, and access to the official records of the association **shall be the subject of a demand for presuit mediation served by an aggrieved party before the dispute is filed in court**.

Fla. Stat. § 720.311(2)(a) (emphases supplied). Indeed, failure to comply with the pre-suit demand for mediation requires dismissal of any disputes filed in court. *See Omni Amelia Island, LLC v. Amelia Island Plantation Cmty. Ass'n, Inc.*, Case No. 3:21-CV-1255-HES-PDB, 2022 WL 19561397, at *1 (M.D. Fla. Apr. 25, 2022) (dismissing plaintiff's complaint for failure to comply with Fla. Stat. § 720.311, requiring a written pre-suit mediation demand "in substantial

conformity" with the statute's form); *see also Steinberg v. Fiesta Homeowners Ass'n, Inc.*, No. 4D2024-0437, 2025 WL 1449977, at *1 (Fla. 4th DCA May 21, 2025) (affirming trial court's order dismissal action for plaintiff's failure to make pre-suit demand for mediation required under the statute); *Dunmar Estates Homeowner's Ass'n, Inc. v. Rembert*, 383 So. 3d 857, 858 (Fla. 5th DCA 2024) (quashing order on defendant's motion to dismiss because plaintiff failed to comply with condition precedent of sending the demand for pre-suit mediation prior to filing lawsuit); *Hunter v. Catalano*, 311 So. 3d 995 (Fla. 2d DCA 2021) (explaining the pre-suit mediation requirement applied to homeowners' disputes with their homeowners' associations, warranting dismissal).

The BGPOA Rules are a covenant of the Association. *See* Compl., at Ex. 5 (pp. 9, 11, 17, 19, 71, 94, 108, 129). Similarly, the suspension resulted from a meeting, of the Board and/or a meeting of the Hearing Committee, which was appointed by the Board. As such, this dispute fits squarely within the ambit of Fla. Stat. § 720.311 for multiple reasons. Therefore, Fla. Stat. § 720.311 required Plaintiffs to serve the Association with a pre-suit mediation demand before filing this action. *See* Fla. Stat. § 720.311(2)(a), and to follow the process outlined therein.

Nevertheless, as stated above, Plaintiffs strategically bypassed this mandatory, statutory requirement and failed to engage in that process solely

in an attempt to try to cast the Association in an extremely negative light. This defect cannot be remedied by amendment because the lawsuit has been filed and the pre-suit mediation has not yet occurred. Accordingly, Plaintiffs violated the statutory requirements under Fla. Stat. § 720.311(2)(a) and Plaintiffs' Complaint should be dismissed.

### III. Under the Rule of Judicial Deference, Courts Should Not Serve in an Appellate Capacity to Intervene in Membership Decisions of Private Organizations.

Under the rule of judicial deference, courts generally refrain from interfering in the internal affairs of voluntary organizations.[5] *Naked Lady Ranch, Inc. v. Wycoki*, 287 So. 3d 587, 590 (Fla. 4th DCA 2019) (holding the trial court erred in conducting a de novo inquiry into the merits of voluntary membership's corporation's disciplinary decision to suspend and terminate a membership); *see also Shumrak v. Broken Sound Club, Inc.*, 898 So. 2d 1018, 1020 (Fla. 4th DCA 2005) (affirming order granting motion to dismiss with prejudice on the basis a social club's statute prevents judicial review of its disciplinary actions). Indeed, it is well-established that "that the governing body of a private membership organization is the final arbiter of the sufficiency of causes for suspension of a member, and that courts may not properly conduct

---

[5] To be clear, the Association is a voluntary organization because the decision to purchase property in Boca Grove is voluntary. Membership in the Association is mandatory, however, for anyone who voluntarily chooses to purchase property in Boca Grove. Compl., at Ex. 5, p. 41.

a collateral inquiry into the merits of such an organization's decision to suspend a member." *Fla. Youth Soccer Ass'n v. Sumner*, 528 So. 2d 4, 5 (Fla. 5th DCA 1988) (*quoting Rosenberg v. Am. Bowling Cong.*, 589 F. Supp. 547, 550 (M.D. Fla. 1984)). Moreover, "courts do not review disciplinary actions of social clubs, including voluntary membership clubs tied to homeownership." *Naked Lady Ranch, Inc.*, 287 So. 3d at 590; *Shumrak*, 898 So. 2d at 1020 (rejecting homeowner's argument that he would be forced to sell his property if he were expelled from the social club because membership is a mandatory condition of homeownership in the community); *see also Florida Research Inst. of Equine Nurturing, Dev., & Safety, Inc. v. Dillon*, 247 So. 3d 538, 543 (Fla. 4th DCA 2018) (reversing trial court's declaratory ruling regarding membership status in a non-profit organization, where entity terminated the membership).

Here, Plaintiffs' claims must be dismissed because Plaintiffs improperly seek the Court's *de novo* review of an internal disciplinary decision, and damages in the conscience-shocking amount of $50,000,000 (or, more than $500,000 per day) under the guise of a discrimination allegation. *See* Compl., ¶¶ 184, 190 ("[Boca Grove] punished Plaintiffs collectively with a 90-day suspension . . . despite [Plaintiffs'] conduct not reasonably violating any rules[.]"). Indeed, the actions complained about – the lack of access to certain facilities – only occurred as a result of the disciplinary suspension. Stated

differently, Plaintiffs ask this Court to determine whether the Subject Video warranted Plaintiffs' suspension from Boca Grove's recreational facilities, including all golf facilities. *See Id.* at ¶¶ 183, 189. Importantly, Plaintiffs have not alleged – because they cannot – that they were denied access to their home. Nevertheless, the Court is not permitted to review the merits of the Association's suspension decision. As a private, membership organization, the Association's Board retains the authority to determine whether sufficient cause exists to suspend a member in accordance with its governing documents. Indeed, the BGPOA Rules prohibit, in pertinent part, conduct by members and their guests that would be offensive to a reasonable person. *Id.* at Ex. C, p. 8.

If the Court could delve into the merits (or lack thereof) of the suspension, which it should not and cannot, the Court could conclude its review solely by examining documents Plaintiffs intentionally attached to their Complaint. In fact, I. Scharf admits, in the written statement he submitted during the fact-finding process associated the Grievance, the Subject Video "may not be to everyone's liking or align with our sensibilities." *Id.* at Exs. 9, 13. The other members present during the golf outing also told the Fact-Finder they did not know about the Subject Video, that they were shocked by it, and that they would not have participated in it if they knew what was happening. *Id.* at Ex. 13. Moreover, Plaintiffs attached proof that at least one member of

the Association found the Subject Video "disgusting" and unacceptable." *Id.* at Ex. 16.

Simply put, the Grievance was filed for a violation of Rule 3 of the BGPOA Rules. The Board determined the Grievance violated Rule 3 of the BGPOA Rules. After notice, a hearing on same, which was rescheduled twice per I. Scharf's request, occurred. I. Scharf participated in the hearing and the pre-hearing fact-finding process. After the hearing, the Board's proposed suspension was confirmed because the Subject Video was found offensive to a reasonable person. Plaintiffs seek redress here, simply because they do not like the outcome. Indeed, Plaintiffs now come to this Court seeking a *de novo* review of the Association's disciplinary process, disguised as a Fair Housing Act claim, but Florida law makes clear the Court intervening in such an appellate capacity would be improper. Accordingly, Plaintiffs' Complaint should be dismissed with prejudice.

### IV. The Complaint Fails to Comply with Rule 8's Short and Plain Statement Requirements and is an Impermissible Shotgun Pleading.

The Complaint should also be dismissed because it fails to comply with the pleading requirements set forth in Rule 8 and amounts to an impermissible shotgun pleading.

A "shotgun pleading" refers to a complaint that violates Rule 8(a)(2), which requires a plaintiff to include a "short and plain statement of the claim,"

or Rule 10(b), which requires a party to "state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P 8(a)(2), 10(b); *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015). The Eleventh Circuit has identified four categories of shotgun pleadings: (1) complaints "containing multiple counts where each count adopts the allegations of all preceding counts;" (2) complaints that are "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action;" (3) complaints that fail to separate each cause of action or claim for relief into different counts; and (4) complaints that assert "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Weiland*, 792 F.3d at 1321–23. "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id*. at 1323.

Here, the Complaint—which is 279 pages long (including 220 pages of attached exhibits) and contains 192 paragraphs of defamatory and intentionally inflammatory allegations, many of which are about people who are not parties to this action— falls within the second *Weiland* category of

shotgun pleadings in that it is "replete with conclusory, vague, and immaterial facts" and thereby fails to comply with Federal Rule of Civil Procedure Rule 8(a). *See Weiland*, 792 F.3d at 1321–23; *see also Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1296 n.9 (11th Cir. 2002) (describing shotgun pleadings as "complete with rambling recitations and factual allegations that could not possibly be material that force the district court to sift through the facts presented and decide for itself which were material to the particular cause of action asserted.") (internal citations and quotations omitted).

Plaintiffs also set forth 55 pages of facts which they apparently intended to apply in one way, shape, or form to each of their two counts, leaving to the Defendant and the Court the task of determining which facts applied to which counts. *See* Compl., at ¶ 181 ("Plaintiffs repeat and incorporate by reference the allegations in paragraphs 1–180); ¶ 187 ("Plaintiffs repeat and incorporate by reference the allegations in paragraphs 1–180"). *Jackson v. Bank of America N.A.*, 898 F.3d 1348, 1356 (11th Cir. 2018) (describing 28-page, 123-paragraph long complaint as an "incomprehensible shotgun pleading" that "patently violates" Rule 8 by employing "a multitude of claims and incorporat[ing] by reference all of its factual allegations into each claim, making it nearly impossible for Defendant[ ] and the Court to determine with any certainty which factual allegations give rise to which claims for relief").

**WHEREFORE**, Defendant BOCA GROVE PROPERTY OWNER'S ASSOCIATION, INC. respectfully moves this Honorable Court for the entry of an order:

a) Granting this Motion;

b) Dismissing each count of the Complaint [DE 01] with prejudice; and

c) Awarding the Association prevailing party attorney fees and costs against Plaintiffs;

along with any other relief the Court deems just and proper under the circumstances.

Dated this 26th day of June 2025.

        Respectfully submitted,

        **NELSON MULLINS RILEY & SCARBOROUGH, LLP**
        *Counsel for Boca Grove Property Owner's Association, Inc.*
        1905 N.W. Corporate Blvd., Ste. 310
        Boca Raton, Florida 33431
        P: 561-343-6900 | F: 561-483-7321

By:   */s/ T.W. Anderson*
      **Terrance W. Anderson, Jr., Esq.**
      Florida Bar No. 27426
      TW.Anderson@nelsonmullins.com
      Jenny.Sica@nelsonmullins.com

## CERTIFICATE OF SERVICE

I CERTIFY THAT on June 26th, 2025, a true and correct copy of the foregoing was served on all parties listed in the attached service list.

    By: */s/ T.W. Anderson*
       **Terrance W. Anderson, Jr., Esq.**
       Florida Bar No. 27426

## SERVICE LIST

**DHILLON LAW GROUP, INC.**
**Matthew Seth Sarelson, Esq.**
**Jacob William Roth, Esq.**
*Counsel for Plaintiffs*
1601 Forum Place, Suite 403
West Palm Beach, Florida 33401
Via CM/ECF: MSarelson@dhillonlaw.com; JRoth@dhillonlaw.com